**HESS v HOME LOAN & BLDG ASSN et**

Ohio Appeals, 1st Dist, Butler Co

No 645.   Decided May 27, 1935

John D. Andrews, Hamilton, for plaintiff.
Roy L. Struble, Cincinnati, Anthony P. Conlon, Cincinnati, and Lawrence A. Kane, Cincinnati, for defendants.

## OPINION

By HAMILTON, J.

The plaintiff amply sustains the burden as to the false and fraudulent representations in securing the subscription and the transfer of the running stock account in question.

It is also proven that Select Dairies, Inc., had the new pass book issued to it, and had drawn $20.00 from the account.

On May 9th, 1934, at the time of the alleged transfer to Goldstein, the transfer was made by written instrument, which in substance stated that Select Dairies, Inc., entered an order amounting to $7,412.13 placed with Hans Goldstein in behalf of Bard & Barger, Inc.; that the order required a down payment of $1,412.73, which was not yet paid by Select Dairies, Inc., and then follows the statement that Goldstein will assume $776.54 of this down payment. Then follows the statement that Select Dairies have assigned the running stock account in question to Hans Goldstein. This is followed by the statement that the assignment is in no wise to be construed as a payment of any kind. It is further stated in the written statement: "It is understood if Select Dairies pays as agreed without having to use book same shall be reassigned to them by the said Hans Goldstein."

This clearly shows the assignment to be a collateral security for payment of a part of the down payment which Goldstein assumed to pay. The evidence as presented by the record is, that when the order was given a chattel mortgage was drawn which

provided that the payment of $1,412.73 should be paid in cash on or before delivery. The evidence is that no part of this down payment to the Bard & Barger Company was ever made. If there was any consideration by reason of the assumption by Goldstein to pay the sum of $776.54 of this down payment, there was a complete failure of consideration.

It appears that but a few hundred dollars was paid into Select Dairies, Inc.; that the Company never started in business, and the only thing that remains of the company are some scattered debts. Further, the assumption of the $776.54 by Goldstein never became effective, for the reason that the balance of the $1,412.73 was never paid by the Company, so that until this was done there was nothing for Goldstein to assume. The amount of the expenditure claimed and testified to by Goldstein was for some minor equipment, for which he claims he made an outlay of some six or seven hundred dollars. This order was not given, however, at the time of the transfer of the running stock account, and the transfer was in no wise connected with this expenditure, and no security for it. The security was for the down payment of the original part, which was never done. Goldstein's testimony as to money paid by him, if true, could not affect the running stock account, as those payments were not mentioned in the written transfer, accompanying the assignment. Whether or not Goldstein was an innocent purchaser, it may well be doubted. The stockholders' subscription list furnished shows Hans Goldstein to be a subscriber to the capital stock in the sum of $100. If he was a member of the Company, what was done by the Company through its agents securing this fraudulent transfer, and his further connection and activities in regard to the same, negatives the idea of him being an innocent purchaser for value. He is not the owner of the running stock account, but held it as security. The assumption of the payment of the account never materialized, and there was no consideration given by him for the transfer.

Our conclusion is, that the equities are with the plaintiff, and he is entitled to the relief prayed for.

A decree may be presented accordingly.

ROSS, PJ, and MATTHEWS, J, concur.